IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ROBERT DALE DAVIS, | ) |
| Plaintiff, | ) Case No. 5:17-cv-60 |
| v. | ) |
| JOSHUA DAVID BRYSON, et al., | ) |
| | ) By: Michael F. Urbanski |
| Defendants. | ) Chief United States District Judge |

## MEMORANDUM OPINION

This case is about a car wreck involving a pickup truck and an ambulance. Presently before the court is a motion to dismiss filed by defendants Joshua Bryson, Gore Volunteer Fire Company, and Frederick County Volunteer Fire and Rescue Association. ECF Nos. 3, 21.[1] The court addressed the motion to dismiss at a hearing on October 18, 2017. For the reasons below, the motion will be denied as it relates to the negligence and gross negligence claims and granted as regards the negligent training and malicious prosecution claims.

### I.

The complaint alleges the following facts. On June 16, 2015, Plaintiff Robert Davis drove his truck westbound on Route 50 in Frederick County, Virginia. Davis was in the right lane as he approached Gore Volunteer Fire Company's station, which is located on the right side of the highway. Bryson was driving an ambulance as he exited the Fire Company's

---

[1] Defendants' later-filed motion, ECF No. 21, targets the amended complaint (which amended only a statement regarding plaintiff's residency) and adopts all arguments set forth in the earlier-filed motion, ECF No. 3. The court treats the two motions as one request to dismiss the case against the moving defendants.

garage and moved toward Route 50. Bryson, a volunteer with the Fire Company, was accompanied by two others in the ambulance, named as John Doe 1 and John Doe 2 in the complaint. The ambulance's lights and siren were not activated as it neared the highway.

As Davis drove closer to the fire station, Bryson "suddenly, without warning, and at the last moment, accelerated directly into [Davis'] lane of travel." Compl. ¶ 13. "With no time to react, [Davis] slammed on the brakes in an unsuccessful attempt to avoid hitting the ambulance." Compl. ¶ 14. Davis' vehicle struck the left side of the ambulance, injuring Davis and damaging his pickup. According to the complaint, Bryson could see Davis approaching for at least 500 feet prior to the accident. One of several witnesses stated that the wreck "happened so fast [Davis'] truck had nowhere to go." Compl. ¶ 20.

The complaint further alleges that Bryson was not responding to a fire emergency at the time of the accident. The complaint, however, leaves open the possibility that Bryson was responding to a medical emergency, rather than a fire emergency. See Compl. ¶ 16. Nevertheless, Davis unequivocally alleges that Bryson's ambulance did not have its lights or siren activated at any time prior to impact.

A moment after the wreck, a Fire Company Captain or Lieutenant (John Doe 3), came out of the fire station yelling, "Turn the lights on! Turn the lights on!" Compl. ¶ 25. Bryson complied and activated the ambulance's warning signals. A Virginia State Police officer arrived at the scene to investigate the wreck and asked Bryson, "You had your lights on, didn't you?," to which Bryson responded, "Yeah." Compl. ¶ 28. As Davis puts it, Bryson recognized he was at fault, so he "maliciously lied to the State Police in a feeble attempt to

2

escape blame." Compl. ¶ 29. Based on Bryson's false statement, the officer charged Davis with reckless driving in violation of Virginia Code § 46.2-853.

Davis proceeded to trial in Frederick County District Court on the reckless driving charge. During the trial, Bryson testified that the ambulance had its lights and siren on before entering the road. The Frederick County District Court acquitted Davis of reckless driving but found him guilty of improper driving in violation of Virginia Code § 46.2-869. Davis appealed for de novo review before the Frederick County Circuit Court. At that trial, Bryson repeated his testimony that the ambulance's lights and siren were on prior to the accident. Other witnesses, however, offered testimony contradictory to Bryson's. The Frederick County Circuit Court found Davis not guilty of improper driving, leaving Davis with no conviction related to the accident.

On June 13, 2017, Davis filed this lawsuit. He names Bryson, Gore Volunteer Fire Company (the "Fire Company"), the Frederick County Volunteer Fire and Rescue Association (the "Fire & Rescue Association"), John Does 1–3, and Hartford Casualty Insurance Company as defendants. The complaint includes seven counts:

1. Gross Negligence – Bryson
2. Negligence – Bryson
3. Negligent Training – the Fire Company and the Fire & Rescue Association
4. Gross Negligence (respondeat superior) – the Fire Company
5. Negligence (respondeat superior) – the Fire Company
6. Malicious Prosecution – Bryson, Does 1–3, and the Fire Company
7. Malicious Prosecution (respondeat superior) – the Fire Company

3

Bryson, the Fire Company, and the Fire & Rescue Association move to dismiss on grounds of sovereign immunity and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## II.

Rule 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085–86 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

---

[2] For ease, the court refers to the three moving defendants collectively as "defendants."

### a) Gross Negligence – Counts One and Four

Counts One and Four allege gross negligence against Bryson and the Fire Company. Defendants argue that the complaint fails to allege gross negligence as a matter of law. In Virginia, "gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Elliott v. Carter, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (cleaned up).[3] "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury." Elliott, 292 Va. at 622, 791 S.E.2d at 732.

Defendants argue that a simple car wreck, such as the one alleged in the complaint, cannot amount to gross negligence. They rely on two Virginia Supreme Court cases in which the court vacated jury findings of gross negligence as a matter of law: Finney v. Finney, 203 Va. 530, 125 S.E.2d 191 (1962), and Laster v. Tatum, 206 Va. 804, 146 S.E.2d 231 (1966). In Finney, the Virginia Supreme Court distinguished negligent driving from grossly negligent driving:

> The failure to be alert and observant and to operate an automobile skillfully and at low speed under all conditions may in some instances amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable gross negligence for which defendant would be responsible.

203 Va. at 533, 125 S.E.2d at 193. In Laster, the Virginia Supreme Court held that "gross negligence cannot be inferred from the mere happening of an accident. Moreover, merely driving 'too fast' does not constitute gross negligence." 206 Va. at 808, 146 S.E.2d at 234.

---

[3] This Memorandum Opinion uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See, e.g., United States v. Reyes, 2017 WL 3262281, at *4 (5th Cir. Aug. 1, 2017).

The court then determined that "the evidence in this case was insufficient as a matter of law to show Burke's gross negligence." Id. Defendants argue that the facts pled in the complaint describe, at most, negligent conduct, and in light of Finney and Laster, Davis' gross negligence claims should be dismissed.

As Davis notes in response, Finney and Laster were decided after trial when a full record was available to assess the facts. The court agrees with Davis: the procedural posture of this case renders Finney and Laster inapposite here. The inquiry on a motion to dismiss is one of plausibility and Davis has satisfied that burden. The complaint states that "Bryson suddenly, without warning, and at the last moment, accelerated directly into Plaintiff's lane of travel" and caused the wreck. This conduct plausibly shows an "utter disregard of prudence that amounts to a complete neglect of the safety" of Davis. Elliott, 292 Va. at 622, 791 S.E.2d at 732. Therefore, the court will not dismiss Counts One and Four. Cf. Adams v. Naphcare, Inc., 246 F. Supp. 3d 1128 (E.D. Va. 2017) ("At this stage of the proceeding, before discovery has even begun, reasonable minds can differ over whether [defendant]'s conduct amounted to an utter disregard of prudence.") (cleaned up).

### b) Negligence – Counts Two and Five

Counts Two and Five allege negligence against Bryson and the Fire Company. Defendants seek dismissal of these counts on sovereign immunity grounds.[4] To receive sovereign immunity, the Fire Company must show (a) that it was an instrumentality of Frederick County, and (b) that the accident occurred incident to the provision of emergency

---

[4] Virginia sovereign immunity does not bar claims of gross negligence. Colby v. Boydenm 241 Va. 125, 128 (1991). Therefore, Defendants raise sovereign immunity as a defense against only the claims of negligence.

services. Specifically, the Virginia Code states that "emergency medical service agencies" are "exempt from suit for damages done incident to providing emergency medical services to the county, city, or town." Va. Code Ann. §§ 32.1-111.4:3(B), 32.1-111.4:6(B).[5] Davis contends that no facts alleged in the complaint indicate that Bryson was operating the ambulance "incident to providing" emergency services at the time of the accident.

In examining a similar statute applicable to fire departments, see Virginia Code § 27-6.02(B),[6] the Virginia Supreme Court has held "that both definition and common sense compel the conclusion that the operation of a fire truck en route to the scene of a fire is incident to fighting the fire." Nat'l R.R. Passenger Corp. v. Catlett Volunteer Fire Co., 241 Va. 402, 409, 404 S.E.2d 216, 219 (1991). Another Virginia court has stated that, "[c]learly, the statute provides door to door protection to the volunteer fire company when it is

---

[5] Section 32.1-111.4:3 applies to agencies "contracting with" a locality to provide emergency services, whereas Section 32.1-111.4:6 covers agencies "established by" a locality. Both types of agencies are treated as instrumentalities of the county and receive the same immunity protections. Davis contends that, at this procedural stage, the Fire Company cannot be treated as an instrumentality under either the "contracting with" or "established by" statutory provisions. According to Davis, no facts in the complaint indicate that the Fire Company was an instrumentality of the County. In response, defendants offer exhibits, which they argue the court may consider at this stage, to show that the Fire Company qualifies as an instrumentality of the County under both provisions. See ECF Nos. 4-1, 4-2, 23. However, the court need not reach this issue. As described herein, a factual question exists as to whether Bryson was operating the ambulance "incident to providing emergency medical services," which is a requirement of both Sections 32.1-111.4:3 and 32.1-111.4:6. As such, resolving the Fire Company's status as an instrumentality of the county is of no moment in deciding the present motion.

[6] There is some uncertainty as to whether the emergency medical service agency provisions, see Virginia Code § 32.1-111.1 et seq., or the volunteer fire company provisions, see Virginia Code § 27-6.01 et seq., should apply in this case. The parties focus their briefs on the former. On one hand, Bryson was driving an ambulance and, as defendants contend, responding to a medical emergency. As such, perhaps the provisions under Section 32.1-111.1 et seq. are the appropriate focus. On the other hand, the Fire Company is indeed a volunteer fire company and Section 27-6.01 et seq. appears to be a better fit here. But this issue is not significant. Both provisions of the Virginia Code include the same protections for damages arising "incident to" the provision of emergency services. See Va. Code Ann. §§ 27-6.02(B), 32.1-111.4:3(B), 32.1-111.4:6(B). So under any option, the Fire Company could not establish its entitlement to sovereign immunity at this stage.

7

responding to a fire or rescue call. Just as clearly, driving a fire truck to the annual company picnic or in the local parade are not acts 'done incident to fighting fires.'" Boyce v. City of Winchester, No. 95-68., 1996 WL 1065526, at *5 (Va. Cir. Ct. Apr. 18, 1996)).

So was Bryson responding to an emergency or was he headed to a parade? The complaint does not say.[7] Defendants ask the court to look beyond the complaint to a computer-aided dispatch ("CAD") event report attached to their motion to dismiss. ECF No. 4-3. Defendants contend that the CAD report shows that Bryson was responding to a medical emergency when the accident with Davis occurred. Although not integral to, or referenced by the complaint, defendants argue that the court may consider the CAD report because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and thus properly subject to judicial notice under Fed. R. Evid. 201." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

However, as defense counsel conceded during the October 18 hearing, there is nothing in the CAD report that indicates that Bryson was indeed responding to the medical emergency at issue in the report at the time of the accident. The timeline of events could suggest that Bryson was driving to the emergency detailed in the CAD report when Davis' truck collided with the ambulance. But that inference requires a factual determination that the court cannot make at this stage. As such, even if the court were to consider the CAD report, a factual question remains as to whether Bryson was driving the ambulance "incident to" the provision of emergency services.

---

[7] As noted, the complaint affirmatively alleges that Bryson was not responding to a fire emergency, but is silent as to whether Bryson was responding to a medical emergency. Compl. ¶ 16.

8

The motion to dismiss must be denied as to Count Five because the court cannot determine that the Fire Company is entitled to sovereign immunity under Virginia Code § 32.1-111.4:3(B) or 32.1-111.4:6(B). Likewise, the court will not dismiss Count Two because Bryson cannot receive sovereign immunity protections if the Fire Company is not so protected. See Messina v. Burden, 228 Va. 301, 312, 321 S.E.2d 657, 663 (1984) ("If an individual works for an immune governmental entity then, in a proper case, that individual will be eligible for the protection afforded by the doctrine."). Therefore, neither the Fire Company nor Bryson have shown sovereign immunity bars the negligence claims at this stage.

### c) Negligent Training – Count Three

Defendants next argue that Davis' negligent training accusation in Count Three should be dismissed for failure to state a claim. Indeed, negligent training is not a recognized cause of action in Virginia. See MCI Commc'ns Servs., Inc. v. MasTec N. Am., Inc., No. 3:17-CV-00009, 2017 WL 2274492, at *3 (W.D. Va. May 24, 2017) (collecting cases); Johnson v. Dep't of Alcoholic Beverage Control, No. 3:15-CV-00055, 2016 WL 7235836, at *10 (W.D. Va. Dec. 13, 2016); Jones v. Kroger Ltd. P'ship I, 80 F. Supp. 3d 709, 714 (W.D. Va. 2015); Morgan v. Wal-Mart Stores E., LP, No. 3:10CV669-HEH, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010). As such, the court will dismiss Count Three of the complaint. The Fire & Rescue Association is only named in Count Three, and therefore will be dismissed as a defendant from this case.

### d) Malicious Prosecution – Counts Six and Seven

Lastly, defendants seek dismissal of Davis' malicious prosecution claims. Count Six names Bryson, John Does 1–3, and the Fire Company. Count Seven alleges that the Fire Company is liable under respondeat superior for malicious prosecution. In Virginia, "malicious prosecution is established by proof that a defendant: (1) instituted or procured a criminal prosecution of the plaintiff; (2) without probable cause; (3) acted maliciously; and (4) the prosecution was terminated in a manner not unfavorable to the plaintiff." Brice v. Nkaru, 220 F.3d 233, 237 (4th Cir. 2000).

"Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia. The requirements for maintaining such actions are more stringent than those applied to other tort cases, and are imposed to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions, criminal prosecutions being essential to the maintenance of an orderly society." Reilly v. Shepherd, 273 Va. 728, 733, 643 S.E.2d 216, 218 (2007) (cleaned up).

Davis contends that the series of post-accident events relating to the ambulance's lights and siren support his malicious prosecution claims. As noted, the complaint states that the ambulance's lights and siren were not activated prior to the accident. After the wreck, John Doe 3 exited the fire station yelling, "Turn the lights on! Turn the lights on!" Compl. ¶ 25. Bryson followed this direction and summoned the police. Bryson told the investigating officer that he had his lights on at the time of the accident. John Doe 1, who was a passenger in the ambulance when the wreck occurred, heard this exchange between the officer and Bryson and did not correct Bryson's statement despite knowing it was untrue. "Based upon

10

Defendant Bryson's false statement that Defendant Bryson had the ambulance's flashing lights and siren activated, and the acquiescence of John Doe 1, [Davis] was criminally charged and prosecuted." Compl. ¶ 33.[8] Defendants argue that that Davis's complaint fails to satisfy the first three elements of malicious prosecution.

In Brice v. Nkaru, 220 F.3d 233 (4th Cir. 2000), the Fourth Circuit examined the first element—whether defendants institute or procured the prosecution at issue. That case involved a grocery store cashier who incorrectly identified Brice as a shoplifter. The cashier did not personally swear-out an arrest warrant; rather, he "simply reported the occurrence of a crime to the police and responded to police requests that he verify a suspect's identification." Id. Prosecutors charged Brice but later dropped the case in light of documentation showing that Brice was out of the country at the time of the theft. Brice then brought a civil action for malicious prosecution against the cashier in which the jury awarded Brice $500,000.

On appeal, the Fourth Circuit made the following observations:

> We find no authority supporting Brice's contention that a witness who provides the police with incorrect information during a criminal investigation ipso facto "institutes" or "procures" the prosecution if he provides that information unequivocally. As the King [v. Martin, 150 Va. 122, 142 S.E. 358 (1928)] decision emphasized, the critical question is whether the witness provided the police with his honest or good faith belief of the facts.

---

[8] The complaint also details Bryson's role as a witness during Davis' two trials. However, no defendant can face liability based on Bryson's testimony at the trials "because witness absolute immunity applies to testimony given in a judicial proceeding." Brice, 220 F.3d at 239 n.6 (collecting cases).

11

Brice, 220 F.3d at 238. The court then qualified this "critical question" by noting that "normally a malicious prosecution plaintiff must show that defendant did more than merely give information ..., e.g., that he requested the initiation of proceedings, signed a complaint, or swore out an arrest warrant against plaintiff." Id. at 239 (summarizing 66 A.L.R.3d 10 II. A. § 3).

As for the cashier's erroneous identification of Brice, the court stated that the cashier "simply provided the police with information within his knowledge, and the police reasonably believed him." Id. at 239–40. "In this instance, there is simply no evidence that [the cashier] controlled the decisions of the law enforcement officials with respect to the investigation and prosecution of Brice." Id. at 239. The court therefore vacated the judgment.

Indeed, Virginia courts have also indicated that to succeed in a malicious prosecution claim, the "plaintiff must show [the] defendant was affirmatively active in instigating or participating in the prosecution." Id. (summarizing 52 Am.Jur.2d Malicious Prosecution § 23 (1970)). In American Railway Express Co. v. Stephens, 148 Va. 1, 15, 138 S.E. 496, 500 (1927), the Virginia Supreme Court reversed a conviction for malicious prosecution because the plaintiff fell short of proving the "instituted" or "procured" element. The court observed that "[t]here isn't a line of testimony in the whole voluminous record that indicates that any of the [defendants] ever urged or even suggested to the Commonwealth's attorney that he prosecute the plaintiff." Am. Ry. Express Co., 148 Va. at 15, 138 S.E. at 500. "[B]ecause the Commonwealth's attorney personally conducted the investigation of the case from the very

beginning," the court held "as a matter of law [that] the prosecution was instituted by the Commonwealth's attorney," and not the defendant. Id. 500-01.

More recently, the Virginia Supreme Court in O'Connor v. Tice, 281 Va. 1, 704 S.E.2d 572 (2011), addressed the "instituted" or "procured" element of malicious prosecution. In that case, building owners approached law enforcement because they were unhappy with the work of a painter. On the suggestion of a sheriff's deputy, the building owners sent the painter a letter that warned of potential criminal charges for construction fraud. The dispute progressed; the painter was criminally charged but eventually acquitted. The painter turned around and secured a malicious prosecution judgment against the building owners. The building owners argued on appeal that "they merely assisted and cooperated with law enforcement in the investigation of [the painter] for construction fraud." O'Connor, 281 Va. at 8, 704 S.E.2d at 575. The Court disagreed. By sending a letter that warned of criminal charges, in addition to providing police "with all the information used to obtain the issuance of the criminal warrant," the building owners "unmistakably authorized [the sheriff's deputy] to proceed criminally against [the painter]." Id. at 9, 704 S.E.2d at 576. The judgment was upheld.

Under the cases outlined above, the plaintiff in a malicious prosecution claim must show that the defendant actively instigated the prosecution. While the cases do not make this point crystal clear, another court has reached a similar conclusion after a survey of controlling precedent. See Bennett v. R & L Carriers Shared Servs., LLC, 744 F. Supp. 2d 494, 511–12 (E.D. Va. 2010), aff'd, 492 F. App'x 315 (4th Cir. 2012) ("Thus, reconciling the relevant case law, ... the Court must ascertain whether a defendant affirmatively, actively,

13

and voluntarily took steps to instigate or to participate in the arrest of the defendant, and whether the defendant exercised some level of control over the decision to have the plaintiff arrested.").[9]

In this case, Davis alleges that Bryson lied to the officer about the ambulance's lights. Davis does not allege that Bryson encouraged the police officer to issue a citation or pursue a prosecution against Davis.[10] Rather, the complaint states that Bryson uttered one word—"Yeah"—in response to the officer's question as to whether the ambulance's lights were on. Compl. ¶ 28. Furthermore, Davis expressly alleges that Bryson lied "in a feeble attempt to escape blame." Compl. ¶ 29. By making a one-word statement in an effort to escape blame for a car accident, Bryson did not institute or procure a prosecution against Davis. Rather, the police officer who investigated the accident instituted the prosecution. The officer wrote Davis' citation in the absence of any request that Davis be charged with a crime. At no point did Bryson take an active step to instigate a prosecution against Davis. As such, Davis'

---

[9] On this mark, Virginia law departs from the law of other states that allow for a more expansive application of malicious prosecution. See, e.g., Bhatia v. Debek, 287 Conn. 397, 407, 948 A.2d 1009, 1018–19 (2008) ("[A] private citizen who knowingly provides false information to a public officer is not entitled to the limited immunity provided under the initiation element, even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer."). But in Virginia, "[a]ctions for malicious prosecution arising from criminal proceedings are not favored" Reilly, 273 Va. at 733, 643 S.E.2d at 218, and require the defendant to have at least "urged or even suggested to [a member of law enforcement] that he prosecute the plaintiff," Am. Ry. Express Co., 148 Va. at 15, 138 S.E. at 500.

[10] Davis does claim that Bryson "summoned law enforcement to the scene" of the accident. Compl. ¶ 27. However, Bryson had an affirmative obligation to report the accident to law enforcement given the circumstances of the wreck. See Va. Code Ann. § 46.2-894. A malicious prosecution claim cannot lie against a party to a car wreck who summons the police in accordance with her statutory obligation to do so.

14

complaint fails to allege facts that could plausibly satisfy the first element of a malicious prosecution claim. Counts Six and Seven will be dismissed in their entirety.[11]

### III.

For the reasons above, the court will grant in part and deny in part the motion to dismiss. ECF Nos. 3, 21. Davis has failed to state a claim of negligent training and malicious prosecution. However, the court will not dismiss Davis' negligence or gross negligence claims. An appropriate Order will be entered.

Entered: 11-7-2017

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge

---

[11] The court will grant the motion to dismiss filed by Bryson and the Fire Company as regards the malicious prosecution claims. And the court will sua sponte dismiss Counts Six and Seven as regards John Does 1–3. The complaint alleges that the Does played an even less active role than Bryson in influencing the officer's decision to charge Bryson. As such, the court's rationale regarding Bryson's conduct applies with equal force to the Does.