CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 25 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

ROBERT DALE DAVIS,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)　　Civil Action No.: 5:17-cv-00060
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
JOSHUA DAVID BRYSON, et al.,　　　　　)　　By: Hon. Michael F. Urbanski
　　　　　　　　　　　　　　　　　　　　)　　Chief United States District Judge
　　　　　Defendants.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

### MEMORANDUM OPINION

This action arises out of an automobile accident in Frederick County, Virginia

between plaintiff Robert Dale Davis ("Davis") and defendant Joshua David Bryson

("Bryson"), who was driving an ambulance for defendant Gore Volunteer Fire Company

("Gore"). Bryson and Gore moved for summary judgment over Davis' claims of negligence

and gross negligence, the only remaining counts in this case. Because the doctrine of

sovereign immunity bars the negligence claims, and no reasonable juror could find gross

negligence, Bryson and Gore's motion for summary judgment will be **GRANTED** and this

case **DISMISSED**.

### I.

Gore provides emergency rescue services in Frederick County, Virginia. On

September 26, 2007, the Frederick County Board of Supervisors entered into a Fire and

Rescue Joint Agreement ("Joint Agreement") with Gore and a number of other fire

companies "to further enhance the partnership between the County and the Company by

defining the role and responsibility of each party, and to further support their joint mission to provide efficient and cost-effective fire and rescue services to the citizens of Frederick County." Ex. F, ECF No. 64-6, at 8. Virginia's Office of Emergency Medical Services Agency issued Gore a license and recognizes Gore as an EMS Agency authorized to provide ambulance services. Bryson serves as a volunteer for Gore and drives its ambulances.

On June 16, 2015, the day of the accident at issue in this case, the 911 Center alerted several rescue companies of a Priority 1 emergency for an unconscious woman at 101 Buffalo Trail. The 911 Center first toned (or contacted) Rescue Company 19–North Mountain and ALS1[1] to assist with the emergency. As Rescue Company 19 had not "marked up" (responded), the 911 Center again toned Rescue Company 19 and also toned Rescue Company 15–Round Hill and Rescue Company 14–Gore. Ambulance 14-2 of Rescue Company 14–Gore marked up to assist with the Priority 1 emergency, when there was no other ambulance en route to the call.

While Gore marked up for the emergency, Davis drove his truck westbound on Route 50 toward Gore's rescue station during rush hour traffic. Davis traveled in the left lane of the highway, and sometime prior to the accident, switched to the right lane due to a car either slowing or stopping. The parties dispute how long before the collision Davis changed lanes. Davis' testimony and witness testimony from a passing transit bus supports a full lane change prior to the accident, while Bryson's testimony and photographs of skidmarks suggest a partial lane change just prior to the accident. As Davis traveled towards Gore, Bryson drove the ambulance to the white fog line at the edge of Route 50 in order to

---

[1] ALS1 is an advanced life support team that cannot transport a patient.

cross traffic and travel eastbound to the emergency. Bryson testified that he stopped for approximately thirty seconds before proceeding, and that he had been trained to wait for vehicles to stop prior to crossing the fog line. The parties dispute whether the ambulance crossed the fog line into the travel lane and whether Bryson activated the ambulance's lights and sirens. Davis' truck then collided with the side of Gore's ambulance as Bryson entered, or was about to enter, Route 50.

A police officer responded to the scene of the accident. Bryson's and Davis' witness statements to the Virginia State Police note that a vehicle was stopped in the left lane and that Davis then moved to the right lane. As a result of the accident, Davis was charged with reckless driving. The Frederick County District Court acquitted Davis of reckless driving but found him guilty of improper driving in violation of Virginia Code § 46.2-869; upon appeal to the Frederick County Circuit Court, Davis was found not guilty of improper driving and has no convictions related to the accident.

On June 13, 2017, Davis filed this lawsuit against Bryson, Gore, the Frederick County Volunteer Fire and Rescue Association ("Frederick"), and John Does 1-3. Hartford Casualty Insurance Company ("Hartford") also was served pursuant to the uninsured/underinsured motorist statute. After a hearing on defendants' Rule 12 motion to dismiss, the court dismissed Davis' claims of negligent training and malicious prosecution (Counts 3, 6, and 7) and sua sponte dismissed John Does 1-3 under Rule 12(b)(6) (Count 6). The court allowed Davis' negligence and gross negligence claims to advance to discovery (Counts 1, 2, 4, and 5). These negligence and gross negligence claims are now subject to summary judgment motions filed by Bryson, Gore, and Hartford.

## II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir.

June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863

(2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth

specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d

at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that

"there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir.

2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the

[c]ourt must determine that no reasonable jury could find for the nonmoving party on the

evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini

Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

## III.

Defendants Bryson and Gore seek summary judgment on sovereign immunity

grounds, and contend that Bryson's actions leading up to and during the accident do not

amount to gross negligence exempted from such immunity.[2] For the reasons explained

below, the court agrees with Bryson and Gore that sovereign immunity bars Davis' claims.

## A.

Defendants contend that sovereign immunity bars Davis' claims against Gore

because it serves as a volunteer fire and rescue company for Frederick County. The parties

---

[2] Defendants also argue that Davis was contributorily negligent and therefore cannot recover under Virginia law. See Defs.' Mem. in Support of Mot. for Summ. J., ECF No. 64, at 15–17; Hartford Cas. Ins. Co.'s Adoption of Defs.' Mot. for Summ. J., ECF No. 65, at 1. As the court resolves summary judgment on the issues of sovereign immunity and gross negligence, the court does not reach the issue of contributory negligence.

agreed at the April 5, 2018 hearing that Va. Code § 27-6.01 et seq., as it existed at the time of

the accident in June 2015, governs whether Gore receives immunity.[3] Former Code § 27-

23.6, which governs the availability of sovereign immunity in this action, states as follows:

> A. Any county, city, or town may provide firefighting services to its citizens by (i) establishing a fire department as a department of government pursuant to § 27-6.1 or (ii) contracting with or providing for the provision of firefighting services by a fire company established pursuant to § 27-8.
>
> B. In cases in which a county, city, or town elects to contract with or provide for the provision of firefighting services by a fire company pursuant to clause (ii) of subsection A, the fire company shall be deemed to be an instrumentality of the county, city, or town and, as such, exempt from suit for damages done incident to fighting fires therein. The county, city, or town may elect to provide for the matters authorized in §§ 27-4 and 27-39.
>
> As used in this section, "provide firefighting services" includes travel while performing fire, rescue, or other emergency operations in emergency vehicles or fire apparatus as described in §§ 46.2-920 and 46.2-1023, respectively.

This section is identical to current Virginia Code § 27-6.02.

Davis takes issue with Gore's ability to meet each of the three paragraphs of § 27-

23.6. First, Davis contends that Gore has not demonstrated its contractual relationship with

Frederick County or that it is an established fire company per the first paragraph. Second,

Davis argues that Bryon's operation of the ambulance was not "incident" to fighting fires as

required by the second paragraph, and did not qualify as "provid[ing] firefighting services"

under the third paragraph. The court does not find Davis' arguments against Gore's

immunity persuasive.

---

[3] Prior to the hearing, the parties disputed whether Virginia Code § 27-6.01 et seq. or Virginia Code § 32.1-111.1 et seq. applied to Gore in this action. Acts of Assembly 502-503 split the emergency services code and newly created Virginia Code § 32.1-111.1 et seq. effective July 2015, which separately addressed ambulance services and fire services. Only Virginia Code § 27-6.01 et seq. was in effect under the law at the time of the accident in June 2015.

6

**1.**

Gore has demonstrated that it contracted with Frederick County to provide firefighting services as a fire company established pursuant to § 27-8. See § 27-23.6(A). Gore falls under section (ii) of the first paragraph, where Frederick County opted to provide firefighting services by "contracting with or providing for the provision of firefighting services by a fire company established pursuant to § 27-8."

With its motion for summary judgment, Gore attached as an exhibit the Joint Agreement entered into between Frederick County and Gore. See Ex. F, ECF No. 64-6, at 8-13. Davis argues that the exhibit is insufficient to demonstrate a contractual relationship because Section Four of the Joint Agreement references County dispatch and response procedures that Gore must conform to in its delivery of emergency rescue services, and these procedures have not been presented to the court. These procedures have no bearing on whether Frederick County contracted with Gore to offer firefighting services in general; moreover, Section Four explicitly requires Gore to "provide assistance to other fire and rescue companies and governmental jurisdictions with which Frederick County and/or the Company has established mutual aid agreements, in accordance with County dispatch and response procedures as established and in conjunction with the Operations Team." See Ex. F, ECF No. 64-6, at 11. Gore clearly contracted with Frederick County to provide firefighting services, and the 911 Center called upon it to engage in emergency services on the day of the accident. Given that Va. Code § 27-23.6 should be "liberally construed," see Nat'l R.R. Passenger Corp. v. Catlett Volunteer Fire Co., 241 Va. 402, 407, 404 S.E.2d 216,

218 (1991), the court finds the existence of a contract for firefighting services between Gore and Frederick County.

Davis also challenges whether Frederick County established Gore as a fire company pursuant to § 27-8. At the time of formation of the contract and at the time of the accident, the follow version of § 27-8 was in effect:

> Any number of persons, not less than twenty, may form themselves into a company for extinguishing fires or for performing emergency medical services, or both. In any county in which two or more companies for extinguishing fires or for performing emergency medical services shall join together and singly use one fire/EMS station, the number of persons in the combined companies shall be not less than twenty. The minimum number of persons required by this section shall only apply to the formation of a fire company.

In its Code, Frederick County established "Gore Volunteer Fire Company" as a "fire and rescue company" under § 27-8.1 of the Code of Virginia. See Frederick County Code § 89-6. Section 27-8.1, now repealed, defined "Fire/EMS company" as "a volunteer fire-fighting or emergency medical services (EMS) organization organized pursuant to § 27-8 in any town, city or county of the Commonwealth, with the approval of the governing body thereof consisting of fire fighters or emergency medical services personnel, or both." Based on the Frederick County Code, and given that § 27-8.1 defined a fire/EMS company as being organized under § 27-8, Gore is a "fire company established pursuant to § 27-8."[4]

In a related argument, Davis argues that defendants have not demonstrated that Gore meets Va. Code § 27-9, which requires individuals forming a fire company to record "a

---

[4] This determination is bolstered by § 89-8 of the Frederick County Code, which states: "Pursuant to § 27-8 of the Code of Virginia, any number of persons, not less than 20, may form themselves into a company for emergency response, subject to approval by the Board." Frederick County Code's recognition of Gore as a fire and rescue company clearly shows approval by the Board.

8

writing stating the formation of such company, with the names of the members thereof thereto subscribed, … in the court of the city or the court of the county wherein such fire company is." Although Gore has not provided this documentation, it is not needed for purposes of establishing sovereign immunity under § 27-23.6. This is in contrast to § 32.1-111.4:3, which does premise the availability of immunity upon meeting § 32.1-111.4:7 and its requirement for EMS companies to record writings, comply with local ordinances, and obtain licenses in order to qualify for immunity.[5] No case law has been advanced, or found, that supports Davis' argument requiring demonstration of § 27-9 for sovereign immunity.

In light of the evidence presented on summary judgment, and given the liberal construction merited in reviewing eligibility for sovereign immunity under § 27-23.6, the court finds that defendants have established that Frederick County provided firefighting services to its citizens by contracting with Gore, a fire company established pursuant to § 27-8. See Nat'l R.R. Passenger Corp., 241 Va. at 407.

**2.**

Davis' second argument that Bryson's operation of the ambulance was not incident to "fighting fires" and does not qualify as "provid[ing] firefighting services" also fails to block the application of sovereign immunity to claims against Gore. The second paragraph of § 27-23.6 states, "the fire company shall be deemed to be an instrumentality of the county, city, or town and, as such, exempt from suit for damages done incident to fighting

---

[5] Davis also argues that Gore did not have a valid license to provide emergency services. Gore is incorporated as "Gore Volunteer Fire Company", but its license for emergency medical services is issued to "Gore Volunteer Fire and Rescue." Davis contends that this makes Gore's license invalid. Again, whether a license has been issued is only relevant to sovereign immunity per formation of an agency under Va. Code § 32.1-111.4:7(A). Section 27-8 governs the formation of a fire company in this action, and thus this argument fails. To the extent the names vary between contracts and licenses, the court finds that Gore has sufficiently demonstrated that it operates under multiple trade names but that they all reference the same fire company recognized by Frederick County.

fires therein." The third paragraph explains that firefighting services "include[ ] travel while performing fire, rescue, or other emergency operations in emergency vehicles or fire apparatus as described in §§ 46.2-920 and 46.2-1023, respectively."

Section 46.2-1023, in effect at the time of the accident, allowed many government vehicles—including ambulances—to be "equipped with flashing, blinking, or alternating red or red and white combination warning lights of types approved by the Superintendent." Section 46.2-920, effective at the time of the accident, addressed "[c]ertain vehicles exempt from regulations in certain situations." Section 46.2-920(A) allowed drivers performing public service under emergency conditions to engage in certain actions, such as disregarding speed limits and regulations governing the direction of movement of vehicles, without being subject to criminal prosecution. Pursuant to § 46.2-920(B), these exemptions generally applied where the operator displayed lights and/or sirens, as reasonably necessary, and the vehicle had insurance or a certificate of self-insurance. This section did not protect operators from criminal prosecution for reckless conduct, and did not release the operator "from civil liability for failure to use reasonable care in such operation." Va. Code § 46.2-920(B). Section 46.2-920(C) further listed the types of emergency vehicles addressed by the statute, including "[a]ny ambulance, rescue, or life-saving vehicle designed or used for the principal purpose of supplying resuscitation or emergency relief where human life is endangered."

Davis challenges whether Bryson's operation of the ambulance on June 16, 2015 qualifies as being "incident to fighting fires" under § 27-23.6 on two grounds. Davis first argues that Bryson's actions do not qualify as "fighting fires," as described by §§ 46.2-920 and 46.2-1023 in paragraph 3, because he did not activate the ambulance's lights and sirens.

Davis secondarily contends that Bryson's operation of the ambulance was not in furtherance of a "fire, rescue, or emergency operation[]" because the 911 Center toned multiple ambulances to respond to the Priority 1 emergency and the ambulance's lights and sirens were not activated.

As to Davis' first argument, the court finds that Davis reads the third paragraph of § 27-23.6 too narrowly. When reviewing the meaning of a statute, the court first looks to the language of the statute itself. See United States v. Ashford, 718 F.3d 377, 382 (4th Cir. 2013) ("[I]n all cases of statutory interpretation, [the court's] inquiry begins with the text of the statute." (quoting Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty., 401 F.3d 274, 279 (4th Cir. 2005))); Signal Corp. v. Keane Federal Sys., 265 Va. 38, 46-47, 574 S.E.2d 253,257 (2003) (explaining statutes should be construed according to their plain language). Section 27-23.6 references §§ 46.2-920 and 46.2-1023 to "describe[]" the types of vehicles and travel associated with fire, rescue, or other emergency operations protected by sovereign immunity. The statutory text of §27-23.6 uses the word "includes" and does not limit the types of emergency travel and vehicles exclusively to the types listed in §§ 46.2-920 and 46.2-1023. See Burgess v. United States, 553 U.S. 124, 131 n.3, 128 S. Ct. 1572, 170 L.Ed.2d 478 (2008) (explaining that a definition that uses the term "includes" generally is nonexclusive). The General Assembly did not so severely limit the application of sovereign immunity to only drivers of vehicles with activated lights and sirens through a quick reference to these statutes, particularly where it appears the legislators were offering them as examples of representative travel and vehicles.

Regardless, Bryson's travel in the ambulance on the day of the accident fits in the type of vehicle and travel described by these sections. Section 46.2-1023 describes types of emergency vehicles and how they "*may* be equipped with flashing, blinking, or alternating red or red and white combination warning lights" (emphasis added). There is no stated requirement that the vehicle *must* be equipped with warning lights to qualify for sovereign immunity, and certainly no requirement that they be activated. Bryson drove an emergency vehicle. His ambulance was equipped with warning lights, though those lights were not activated at the time of the accident. Therefore, Gore meets the requirements of § 27-23.6 because Bryson's operation of Gore's ambulance meets the description of § 46.2-1023.

Section 46.2-920's description of emergency vehicles and types of travel similarly does not include an absolute need to display lights or sirens. The Office of the Attorney General has opined that "the exemption from criminal prosecution found in § 46.2-920 does not require emergency vehicle operators to activate the vehicle's lights or siren when doing so is not reasonably necessary." See Op. No. 10-106, 2010 WL 4791593, at *1 (Va. A.G. Nov. 15, 2010).[6] Bryson drove an emergency vehicle—an ambulance—to a Priority 1 emergency. Without a clear statement by the General Assembly that a lack of sirens and lights prohibits sovereign immunity, Gore qualifies for § 27-23.6 sovereign immunity because Bryson engaged in emergency travel in an emergency vehicle similar to that described by § 46.2-920.

---

[6] The Office of the Attorney General issued this opinion about a prior version of § 46.2-920(B). However, the "as may be reasonably necessary" language of the statute that supports the Attorney General's opinion did not substantively change between the versions for purposes of this action. One subsection, A2, required emergency lights as of 2015; but there is no evidence that A2 is applicable to this action, as it addresses vehicles "[p]roceed[ing] past any steady or flashing red signal, traffic light, stop sign, or device indicating moving traffic shall stop. . . ." Va. Code § 46.2-920(A)(2).

Importantly, to read "firefighting services" as Davis suggests would eviscerate the existing case law about the availability of sovereign immunity to rescue companies, particularly in emergency situations. In examining Virginia Code § 27-23.6, the Supreme Court of Virginia has held "that both definition and common sense compel the conclusion that the operation of a fire truck en route to the scene of a fire is incident to fighting the fire." Nat'l R.R. Passenger Corp., 241 Va. at 409, 404 S.E.2d 216, at 219. Another Virginia court held: "Clearly, the statute provides door to door protection to the volunteer fire company when it is responding to a fire or rescue call. Just as clearly, driving a fire truck to the annual company picnic or in the local parade are not acts 'done incident to fighting fires.'" Boyce v. City of Winchester, No. 95-68., 1996 WL 1065526, at *5 (Va. Cir. Ct. Apr. 18, 1996). Although not specifically mentioning § 27-23.6, the Supreme Court of Virginia elaborated in an unpublished opinion that "[t]he existence of an emergency or circumstances requiring emergency operation of a vehicle is not required under our precedent" for a finding of sovereign immunity in the operation of an ambulance. See Anders v. Kidd, No. 131891, 2014 WL 11398555, at *3 n.5 (Va. Oct. 31, 2014).

In sum, sovereign immunity under Virginia law has not been determined to be dependent on the activation of lights and sirens. See, e.g., Nationwide Mut. Ins. Co. v. Hylton, 260 Va. 56, 59, 64 (2000) (finding state trooper entitled to sovereign immunity when struck vehicle in pursuit of traffic violator prior to activating lights and siren, with the application of immunity turning on the trooper's decision to pursue the offender); McBride v. Bennett, 288 Va. 450, 455-56 (2014) (applying sovereign immunity to police officer responding to a domestic disturbance call without activating his lights and siren because

officer was not driving in routine traffic and was exercising judgment and discretion beyond ordinary driving situations to effectuate the governmental purpose of his job).

In fact, the Supreme Court of Virginia has explicitly held that the precursor to § 46.2-920—Code § 46.1–226—cannot alone determine the availability of sovereign immunity.[7] In Colby v. Boyden, 241 Va. 125, 132, 400 S.E.2d 184, 188 (1991), the Supreme Court held:

> Code § 46.1–226 neither establishes nor speaks to the degree of negligence necessary to impose civil liability on one to whom the section applies. The degree of negligence required to impose civil liability will depend on the circumstances of each case. For example, § 46.1–226 is not limited to governmental officers or employees. Therefore, if the operator of a vehicle in an emergency situation is not a governmental employee, he may be protected under § 46.1–226 from criminal prosecution, but he may be civilly liable upon a showing of simple negligence because the defense of sovereign immunity is unavailable to him.

Other Virginia courts have followed Colby's interpretation. See Campbell v. Compton, 28 Va. Cir. 317, at *1-2 (Essex Cty., 1992) (holding that a trooper traveling between 70 and 80 miles per hour during a chase was entitled to sovereign immunity protection notwithstanding his failure to activate his flashing lights and siren pursuant to Va. Code § 46.2-920, and that such conduct also did not constitute gross negligence); see also Anders, 2014 WL 11398555, at *2 n.4 (explaining how a Virginia "regulation affects the application of Code § 46.2–920, which may be dispositive of a traffic offense but is not dispositive of the application of sovereign immunity in a civil liability context"). An interpretation of § 46.2-920 to universally

---

[7] The court notes that the Supreme Court of Virginia reviewed § 46.1-226 and explained that its exemptions "do not protect the operator of any vehicle from criminal prosecution for conduct constituting reckless disregard for the safety of persons and property, or release the operator of any such vehicle from civil liability for failure to use reasonable care in such operation." Smith v. Lamar, 212 Va. 820, 822, 188 S.E.2d 72, 73–74 (1972). While § 46.1-226 allows for civil liability for failure to use reasonable care, this statute encompasses both governmental and nongovernmental persons and does not negate the availability of sovereign immunity.

deny sovereign immunity because of a failure to turn on lights and sirens is without support in the law.[8] By the statutory text, and as supported by the case law, Bryson operated Gore's ambulance in a manner consistent with granting Gore sovereign immunity under § 27-23.6.[9]

As to Davis' second argument, Bryson clearly operated Gore's ambulance in furtherance of a "fire, rescue, or emergency operation[ ]." The fact that the 911 Center toned multiple emergency vehicles to the emergency does not negate the existence of the emergency or Gore's obligation to attend to it. Similarly, whether the ambulance's sirens and lights were activated has no bearing on whether an emergency actually existed. The Frederick County Sherriff's Office Report from June 16, 2015 shows that Bryson responded to a Priority 1 medical emergency, specifically an unconscious woman. See Ex. E to Defs.' Mot. for Summ. J. Although other ambulances were alerted, Gore specifically was toned and was required to respond; moreover, no other ambulances capable of transportation were on the way to the emergency at the time of the accident. Bryson drove the ambulance for the purpose of responding to this medical emergency, and thus his conduct was incident to

[8] The court rejects Davis' argument that recognizing sovereign immunity here would provide a free pass to emergency responders to take extreme actions such as "flooring it" into traffic. Such extreme actions would amount to gross negligence, which is not protected by sovereign immunity. See Colby, 241 Va. at 128.

[9] Since the time of the accident, the Virginia General Assembly has expanded sovereign immunity based on actions in §§ 46.2-920 and 46.2-1023:

> Notwithstanding any other provision of law, no volunteer firefighter or volunteer emergency medical services personnel shall be liable for any injury to persons or property arising out of the operation of an emergency vehicle as defined in § 46.2-920 when such volunteer is en route to respond to a fire or to render emergency care or assistance to any ill or injured person at the scene of an accident, fire, or life-threatening emergency and the emergency vehicle displays warning lights as provided in § 46.2-1022 or 46.2-1023 and sounds a siren, exhaust whistle, or air horn, unless such injury results from gross negligence or willful or wanton misconduct. *The immunity provided by this section shall be in addition to, not in lieu of, any other applicable immunity provided by state or federal law, including § 2.2-3605 or 27-6.02.*

Va. Code Ann. § 8.01-225.3 (emphasis added). The statute provides for additional sovereign immunity based on these two statutory sections, and recognizes the preexisting immunity under state law, including but not limited to § 27-6.02.

15

providing emergency medical services. See Nat'l R.R. Passenger Corp., 241 Va. at 409, 404 S.E.2d at 219 (holding operation of a fire truck en route to the scene of a fire is incident to fighting the fire); Boyce, 1996 WL 1065526, at *5 (explaining "the statute provides door to door protection to the volunteer fire company when it is responding to a fire or rescue call").

As a fire company contracting with Frederick County and recognized by the Frederick County Code, Gore has demonstrated that it is an instrumentality of Frederick County. The damages alleged by Davis in this case were incident to "fighting fires" as defined by § 27-23.6 because Bryson was operating Gore's ambulance en route to a Priority 1 emergency. Therefore, sovereign immunity bars claims against Gore. The court will **DISMISS with prejudice** the claims against Gore.

### B.

A state's immunity from suit also can extend to individual state actors or employees. See Messina v. Burden, 321 S.E.2d 657, 661–62 (Va. 1984). In general terms, sovereign immunity will shield state employees from liability for acts of simple, but not gross, negligence, where the acts are discretionary and not ministerial. See Colby, 400 S.E.2d at 186–87; Phelps v. Anderson, 700 F.2d 147 at 149 (4th Cir. 1983). In determining whether immunity extends to Bryson, the court is guided by the factors set forth in James v. Jane, 221 Va. 43, 54, 282 S.E.2d 864, 869 (Va. 1980), which asks the court to evaluate "(1) [t]he function the employee was performing; (2) [t]he state's interest and involvement in that function; (3) [w]hether the act performed by the employee involved the use of judgment and

16

discretion; and (4) [t]he degree of control and direction exercised by the state over the employees."[10] Pike v. Hagaman, 787 S.E.2d 89, 92 (Va. 2016).

The court has determined that Gore benefits from sovereign immunity, and thus Bryson similarly should be shielded from Davis' simple negligence claim if his operation of Gore's ambulance was discretionary in nature. The parties seem to agree, or at least have not contested, that the first, second, and fourth factors weigh in Bryson's favor. The court agrees. The function performed by Bryson—responding to a Priority 1 emergency via ambulance—falls squarely within the governmental function of responding to citizens' health emergencies. Cf. Edwards v. City of Portsmouth, 237 Va. 167, 171, 375 S.E.2d 747, 750 (1989) (holding that city's provision of emergency ambulance services is a governmental function). Frederick County has a great interest in and involvement in its provision of emergency services, and broadly controls and directs fire and rescue companies in how they respond to such emergencies, as evidenced by Virginia Code § 27-6.01 et seq. and Virginia Code § 32.1-111.1 et seq.

The determinative factor in this action is whether Bryson's actions in driving the ambulance to the emergency involved the use of judgment and discretion. Bryson claims his ambulance operation required exercising judgment and discretion, as he needed to make

---

[10] Notwithstanding the fact that a higher degree of state control over the employee weighs in favor of immunity, where the act complained of involves the use of judgment and discretion, a finding of immunity is supported. The Supreme Court of Virginia explains this apparent conflict, noting:

> At first glance, the issue of wide discretion that influences our consideration of the grant of governmental immunity in applying the third element of the James test appears to be at odds with our consideration of a higher level of governmental control in the application of the fourth element of that test in this case. However, when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum use of the employee's special training and subsequent experience.

Lohr v. Larsen, 246 Va. 81, 88, 431 S.E.2d 642, 646 (1993).

17

split-second decisions in responding to the emergency. Davis argues that Bryson's actions were actually ministerial in nature, primarily arguing that he only he relied on his training by Gore regarding how to drive the ambulance, how to stop at the white fog line before entering Route 50, and how to activate the lights and sirens.

In evaluating this third factor, courts must decide whether the defendant performed a discretionary or ministerial act,[11] and whether the act was necessary to the performance of the governmental function itself. See Pike, 292 Va. at 217, 787 S.E.2d at 93. Almost every act requires the exercise of some judgment and discretion, but courts must look at the act in the appropriate context to determine the nature of the act. Id. at 217–18, 787 S.E.2d at 93. Whether a matter is truly committed to the discretion of a government employee is therefore a question of degree and requires an analysis of the circumstances of a particular situation.

Virginia courts repeatedly have found that the operation of a government vehicle during the course of an emergency or a situation involving special risks requires the exercise of judgment or discretion. See, e.g., Nat'l R.R. Passenger Corp., 241 Va. at 413, 404 S.E.2d at 222 ("We cannot logically distinguish the act of crossing a railroad track without stopping in order to extinguish a fire from running a red light in order to apprehend a traffic offender. We think both acts involve the exercise of judgment and discretion."). "[U]nlike the driver in routine traffic, a government employee in an emergency situation must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks." McBride, 288 Va. at 455 (quoting Colby, 241 Va. at 129-30); see also

---

[11] Black's Law Dictionary defines a ministerial act as a mandatory act, or "[a]n act performed without the independent exercise of discretion or judgment." Act, Black's Law Dictionary (10th ed. 2014); see also Moreau v. Fuller, 276 Va. 127, 135, 661 S.E.2d 841, 845–46 (2008) (in the context of petitions for mandamus, defining ministerial act as "one which a person performs in a given state of facts and prescribed manner in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done" (citations omitted)).

Nationwide Mut. Ins., 260 Va. at 59, 64 (applying immunity to officer in pursuit of a vehicle following a traffic infraction). For situations not involving emergencies, sovereign immunity remains "applicable under circumstances where the operation of an automobile involve[s] special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer." Anders, 2014 WL 11398555, at *1. In Anders v. Kidd, No. 131891, 2014 WL 11398555, at *1 (Va. Oct. 31, 2014), where the ambulance operated without activated lights and sirens and in nonemergency conditions, the Supreme Court recognized an ambulance driver's sovereign immunity because "the evidence established that [the driver's] operation of the ambulance involved special risks arising from the transportation of [the stable patient] and the exercise of judgment and discretion about the proper means of effectuating the governmental purpose of transporting [the patient] to the hospital as distinguished from the simple operation of a vehicle in routine traffic." Id. at *3.

Davis tries to distinguish this line of case law by arguing that Gore trained Bryson in how to drive the ambulance and respond to emergencies. He asks the court to dissect Bryson's actions in driving the vehicle, finding specific actions—such as the decision to stop at the white fog line—as requiring no judgment because he received training. Davis points to no authority supporting that a volunteer's training dictates whether he exercised judgment and discretion in an emergency situation. In fact, in Friday-Spivey v. Collier, 268 Va. 384, 390 (2004), the Supreme Court evaluated and rejected the related argument that special skill and training required to operate a fire truck is *per se* exercise of judgment and discretion. The court held that the plaintiff's "suggestion that a controlling factor is whether a government

employee received specialized training in the operation of a special or heavy duty vehicle (e.g., tractor-trailer, fire truck, school bus, dump truck, snow plow, etc.) has been effectively rejected in prior decisions. Such a rule would create a blanket immunity as a matter of law whenever that vehicle was used to perform a governmental function." Id. at 391; see also Ali v. City of Fairfax, No. 1:14-CV-1143, 2015 WL 1487129, at *7 (E.D. Va. Mar. 30, 2015) (same).

The opposite is true as well. The fact that Bryson was trained on the appropriate way to drive the ambulance does not preclude him from exercising judgment and discretion in the operation of Gore's ambulance in response to an emergency. See, e.g., Stanfield v. Peregoy, 245 Va. 339, 429 S.E.2d 11 (1993) (finding truck driver spreading salt on streets during snow emergency used judgment and discretion to determine which streets needed treatment even though he had completed special training to operate the equipment). Circuit courts have in fact found that the driver of a rescue squad vehicle responding to an emergency both received appropriate training to drive the vehicle and exercised judgment and discretion beyond an ordinary driving situation, thereby meriting sovereign immunity against claims resulting from a motor vehicle accident. See Strong v. Taylor, No. CL04-10,055, 2006 WL 2335256, at *1 (Va. Cir. Ct., Albemarle Cty., May 10, 2006). Adopting Davis' limited interpretation of what constitutes the exercise of judgment and discretion would effectively prevent the application of sovereign immunity any time Bryson drove the ambulance, which is against the weight of the case law. See McBride, 288 Va. at 455; Colby, 241 Va. at 129-30; Anders, 2014 WL 11398555, at *1. Moreover, Bryson's collective decision-making process and how to employ his training in each decision cannot fairly be

split apart and assessed at a microscopic level. Bryson's operation of the ambulance, and whether such operation involved discretion, is most fairly assessed by viewing the entirety of the operation. On the whole, Bryson exercised judgment and discretion in applying his training and determining how to operate the ambulance in the safest and quickest manner to respond to a Priority 1 emergency.

Davis further tries to distinguish these cases by arguing that Bryson's operation of the ambulance was ordinary in nature given the lack of activated sirens and lights, and because multiple ambulances were toned to respond to the emergency. At the time of the accident, Gore had been toned and marked up to respond; no other ambulances responded to the emergency prior to the accident and Gore was required to respond to the emergency regardless of the activation of lights and sirens. Bryson exercised judgment and discretion in determining the haste needed to respond to the 911 Center's call. This case is not like Friday-Spivey v. Collier, 268 Va. 384, 390 (2004), where the defendant was driving without lights and sirens to a *nonemergency* public service call of a child locked in a car, or Bosserman v. Hayes, 89 Va. Cir. 84, 88 (Va. Cir. 2014), where the defendant ambulance driver was *returning* to the station after providing emergency services. This case also is not like Heider v. Clemons, 241 Va. 143, 145 (1991), where a sheriff collided with a motorcycle *after* serving process at a residence and thus engaged in an ordinary driving situation. The accident at issue here occurred where Bryson was *responding* to a Priority 1 *emergency*. Operation of the ambulance involved special risks arising from the governmental activity as it was imperative for Bryson to quickly respond to the emergency. The case law makes no distinction regarding whether Gore was the first ambulance to be called, or whether lights and sirens

were activated; it should not matter as Gore was obligated to respond to the 911 Center's tone.[12] See Strong, 2006 WL 2335256, at *1 (applying sovereign immunity where multiple rescue units were dispatched to emergency call). In this context, Bryson exercised discretion and judgment in determining how to appropriately travel to an emergency situation with special risks.

Accordingly, the four-factor test weighs in Bryson's favor, and sovereign immunity therefore protects him from Davis' claim of simple negligence. The court will **DISMISS with prejudice** the simple negligence claims against Bryson.

## C.

Sovereign immunity does not protect Bryson from Davis' claim of gross negligence. See Colby, 241 Va. at 128; Muse v. Schleiden, 349 F. Supp. 2d 990, 1000 (E.D. Va. 2004) ("Under Virginia law, an employee of a sovereign entity is entitled to sovereign immunity only from claims for ordinary negligence, not gross negligence." (citing James, 282 S.E.2d at 869)). In Virginia, "gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Elliott v. Carter, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (internal citations and quotation marks omitted); see also Colby, 241 Va. at 133 (citing Frazier v. City of Norfolk, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)) ("[G]ross negligence is the 'absence of slight diligence, or the want of even scant care.'"). "Several acts of negligence which separately may not amount to gross negligence, when combined may

---

[12] Davis' argument that only the first responding ambulance should receive immunity goes against public policy as well. If a 911 Center tones a fire company to respond to an emergency, and that company is required to respond, the responders—particularly volunteers, as here—should not second guess whether they have sovereign immunity available because another company may or may not be responding as well.

22

have a cumulative effect showing a form of reckless or total disregard for another's safety."
Chapman, 252 Va. at 190 (citing Kennedy v. McElroy, 195 Va. 1078, 1082 (1954). A jury
ordinarily decides whether gross negligence has been established. Id. (citing Frazier, 234 Va.
at 393. However, the court may decide gross negligence if the evidence only supports a claim
of simple negligence. See, e.g., Muse, 349 F. Supp. 2d at 1000.

The Supreme Court of Virginia has overturned two jury verdicts finding gross
negligence in cases involving automobile accidents. In Finney v. Finney, 203 Va. 530, 531,
125 S.E.2d 191 (1962), the Supreme Court held that a driver was not grossly negligent where
he looked away from the road while approaching an intersection. The Court explained, "lack
of attention and diligence, or mere inadvertence, does not amount to wanton or reckless
conduct or constitute culpable [gross] negligence for which defendant would be
responsible." Id. at 533 (quoting Young v. Dyer, 161 Va. 434, 440-1, 170 S.E. 737, 739).
Similarly, in Laster v. Tatum, 206 Va. 804, 146 S.E.2d 231 (1966), the Supreme Court of
Virginia held that gross negligence could not be inferred from the happening of an accident,
and found no gross negligence as a matter of law despite the defendant driving too fast on a
narrow road at dusk. See 206 Va. at 805-08.

Federal and state courts have followed suit and granted summary judgment or
overturned jury verdicts for gross negligence where the evidence only supported claims of
simple negligence or less. See, e.g., Rutecki v. CSX Hotels, Inc., 290 F. App'x 537, 543 (4th
Cir. 2008) ("We agree with the district court that Rutecki has produced 'no affidavits, no
deposition testimony, and no expert opinion that Mr. Diem's conduct even strayed from
what was reasonable under the circumstances, let alone to such a degree as to show an utter

disregard for prudence.'"); <u>Colby</u>, 241 Va. at 133 (finding plaintiff failed to establish prima facie case of gross negligence where officer exercised some degree of care where officer activated his lights and siren, only sped 5 m.p.h. over speed limit, and swerved to attempt to avoid collision); <u>Rigney v. Neauman</u>, 203 Va. 822, 826, 127 S.E.2d 403, 406 (1962) ("Considered alone or with the other evidence introduced by the plaintiff, it fails as a matter of law to make a case of gross negligence against the defendant. A verdict for the plaintiff based thereon could not stand and hence the action of the court in striking the evidence and entering summary judgment for the defendant Neauman was proper.").

Analogous to the accident at issue in this action, the district court for the Eastern District of Virginia denied leave to amend a complaint to add gross negligence where the deputy that caused the accident had sovereign immunity. The court explained in <u>Muse v. Schleiden</u>, 349 F. Supp. 2d 990, 1000–01 (E.D. Va. 2004),

> The record reflects that Deputy Schleiden proceeded into the intersection only once he believed he saw the light change from red to green, and that he was driving only "5–7 miles per hour" at the time of impact. Had Deputy Schleiden watched the light at all times instead of relying on his peripheral vision while distracted by a conversation with his passenger, he almost certainly would have seen the red light and would not have entered the intersection. To be sure, an ordinarily prudent person would have been more attentive and would not have entered an intersection on a red light. Nonetheless, the facts in the record reflect that Deputy Schleiden's acts amounted to no more than ordinary negligence and do not demonstrate an "utter disregard of prudence amounting to complete neglect of the safety of another."

<u>Id.</u> at 1000–01 (citing <u>Colby</u>, 400 S.E.2d at 189; <u>Finney</u>, 203 Va. 530, 125 S.E.2d 191).

Entering an area of the road that should not have been entered due to inattention or other

imprudent conduct may constitute negligence, but it does not arise to the level of gross negligence.

The accident between Davis and Bryson constitutes simple negligence at most. Cf. Smith v. Lamar, 212 Va. 820, 824, 188 S.E.2d 72, 74–75 (1972) ("The standard of care exacted of [a police officer in pursuit] is 'the standard of care of a prudent man in the discharge of official duties of a like nature under like circumstances'."). Davis has presented no evidence that supports the wreck being anything other than a run-of-the-mill car accident. Davis argues that the cumulative evidence somehow changes this ordinary car accident into a situation where Bryson displayed "utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Elliott, 292 Va. at 622, 791 S.E.2d at 732 (internal citations and quotation marks omitted). Viewing the facts in the light most favorable to Davis, Bryson failed to activate the ambulance's emergency lights and sirens; entered the highway despite observing oncoming traffic; and failed to yield the right-of-way, maintain a proper lookout, or maintain control of his vehicle. Davis further points to the busy flow of traffic at rush hour and Bryson's observation of Davis' truck in the right lane.

Reviewing all of this conduct collectively, Bryson's actions do not amount to egregious conduct that would shock "shock fair minded men." Laster, 206 Va. at 807. The evidence overwhelmingly points to an accident on a busy road where, at worst, Bryson assumed that the road would be clear and moved forward without being sufficiently diligent. Counsel for Davis even argued at the hearing that Bryson waited for thirty seconds for traffic to slow before attempting to cross Route 50, and that Bryson did not immediately dart into the highway. Davis' argument broadly centers on whether Bryson activated the

ambulance's lights and sirens, and to what degree the ambulance pulled into the road before stopping; this is not sufficient to show gross negligence.

Bryson's actions on the day of the accident are factually inapposite to the case law that Davis offers as comparable. In Alfonso v. Robinson, 257 Va. 540 (1999), the defendant tractor trailer driver abandoned his truck on a highway in the nighttime without activating any hazard lights.[13] The driver failed to exercise any care when he decided to leave his tractor trailer without illumination in the middle of a highway at night, which posed an obvious danger. Bryson in no way acted with such disregard. He waited to enter the highway, and by both parties' testimony, at least one car slowed when Bryson attempted to enter. This case tracks most similarly to Muse and Anders, where the government-employed drivers operated their vehicles in a way that did not show complete neglect for the safety of others. Bryson's actions in question, which occurred in the context of responding to a Priority 1 emergency and the need to cross a busy highway to get to that emergency, demonstrated sufficient care to escape gross negligence.

Although "[i]t is often a difficult task to determine whether the facts and the reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law, or present an issue of fact for a jury under proper instructions," Wallower v. Martin, 206 Va. 493, 496, 144 S.E.2d 289, 291 (1965), the evidence presented in this action does not make this a difficult task. Reasonable men would not differ as to whether Bryson's actions constitute gross negligence. See Fleming v. Bowman, 203 Va. 876, 879, 128 S.E.2d 290, 292 (1962) (citing Young v. Dyer, 161 Va. 434, 440, 170 S.E. 737, 739; Yorke v. Cottle,

---

[13] Alfonso does not stand for the proposition that failure to activate hazard lights alone can amount to gross negligence. To read this as so would be in direct contravention with Anders.

173 Va. 372, 4 S.E.2d 372; <u>Finney</u>, 203 Va. at 533, 125 S.E.2d at 193) (explaining summary judgment is not appropriate if "reasonable men might differ as to whether or not the facts and circumstances in this case constituted gross negligence"). Bryson showed some level of care in attempting to cross Route 50 in his response to an emergency. While there may be a question of simple negligence, reasonable men would not differ in determining that Bryson's ambulance operation could not possibly amount to a "reckless or total disregard for another's safety." <u>Chapman</u>, 252 Va. at 190. Therefore, Davis' claim of gross negligence against Bryson must be **DISMISSED**.

## IV.

For the reasons stated above, Bryson and Gore's Motion for Summary Judgment, ECF No. 63, is **GRANTED**, and Hartford's Motion for Summary Judgment, ECF No. 65, is **DENIED as moot**. As the grant of summary judgment resolves all outstanding claims in this case, the court further **DENIES as moot** Bryson and Gore's motion in limine.

An appropriate Order will be entered this day.

Entered: 0 4-25-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge